UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CHARLES E. JONES, #226897,

                    Petitioner,                  Case No. 14-cv-14624

v                                     Honorable Thomas L. Ludington

SHERRY L. BURT,

                    Respondent.

_____/

**ORDER DENYING PETITIONER'S PETITION FOR HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254, DENYING CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO APPEAL IN FORMA PAUPERIS**

Petitioner, Charles E. Jones, confined at the Muskegon Correctional Facility in Muskegon, Michigan, filed a *pro se* application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In the Livingston County Circuit Court, a jury convicted Petitioner (1) of assault with intent to do great bodily harm less than murder, Mich. Comp Laws § 750.84; (2) aggravated stalking, Mich. Comp Laws § 750.411i; (3) false threat of terrorism, Mich. Comp Laws § 750.543m; and (4) being a fourth felony habitual offender, Mich. Comp Laws § 769.12. Petitioner was sentenced to concurrent terms of eighteen to forty years for each conviction.

On December 8, 2014 Petitioner filed a petition seeking Habeas Corpus (ECF No. 1), contending that (1) his due process rights were violated by the introduction of prejudicial evidence of prior acts of domestic violence, (2) the trial judge erred in refusing to appoint substitute counsel for Petitioner, (3) the trial judge erred in failing to suppress Petitioner's confession on the ground that the police questioned Petitioner after he invoked his right to remain silent, (4) the trial judge failed to obtain a valid waiver of counsel before permitting Petitioner to represent himself at the hearing to suppress his confession, and (5) Petitioner's trial

counsel was ineffective.  On June 15, 2015 Respondent filed an answer to the petition, asserting

that the claims lack merit.  The Court agrees that Petitioner's claims lack merit, and therefore the

petition will be denied.

## I.

The relevant facts were summarized by the Michigan Court of Appeals, and are presumed

correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410,

413 (6th Cir. 2009):

> Defendant's convictions stem from his conduct toward his former girlfriend,
> hereafter the victim.  During trial, the prosecution presented evidence that, after a
> series of violent acts and threats against the victim, some of which resulted in two
> earlier convictions of domestic violence, defendant sprayed the victim with an
> inflammable liquid and set her on fire.  An acquaintance testified that, while the
> police were searching for defendant in connection with the latter incident,
> defendant stated that he was on his way to the victim's location with three cans of
> gas, two propane tanks, and two shotguns, and that defendant spoke of "suicide by
> police." A police detective testified that defendant telephoned him and said he
> was going to track the victim down and blow up the bank where she worked.  In
> an interview with the detective that followed, defendant stated that he never
> intended to set the victim on fire, but only wanted to spray her with perfume.
> Defendant stated that he suspected that the victim's cigarette caused what he
> sprayed on her to ignite.
>
> *People v. Jones*, No. 308293, 2013 WL 5630075, at *1 (Mich. Ct. App. Oct. 15, 2013).

Petitioner's conviction was affirmed on appeal. *Id., lv. Den.* 495 Mich. 992, 845 N.W.2d

106 (2014).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Petitioner's right to due process was violated when the trial court allowed the
prosecutor to introduce unfairly prejudicial evidence of other alleged domestic
assaults not tending to show motive, intent, or absence of accident.

II. Petitioner's right to due process was violated when the trial court refused to
appoint substitute counsel after Petitioner and his counsel were in conflict about
fundamental trial tactics on the charge of making a false terrorism threat.

- 2 -

III. The trial court violated Petitioner's due process rights by admitting statements Petitioner made to a detective during custodial interrogation where the detective did not scrupulously honor Petitioner's silence following the *Miranda* warning by another officer the previous day.  Furthermore due process requires a new trial where the trial court accepted appellant's equivocal waiver of counsel prior to a pretrial hearing on suppression.

IV. Petitioner was deprived of his right to effective assistance of counsel at trial when Petitioner's counsel elicited Petitioner's prior forgery and drunk driving conviction while cross-examining the complainant.

V. Petitioner's defense counsel was constitutionally ineffective in failing before trial to correct the defense expert's mistaken recollection that Petitioner had admitted threatening to blow up the bank where the complainant was employed.

**II.**

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

As amended, 28 U.S.C. § 2254(d) permits a federal court to issue the writ only if the state court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) & (2); *Franklin v. Francis*, 144 F. 3d 429, 433 (6th Cir. 1998).  Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (*quoting Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue

made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F. 3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases....
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id*. at 409.  As stated in *Renico v. Lett*:

> We have explained that an unreasonable application of federal law is different from an incorrect application of federal law.  Indeed, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must be objectively unreasonable.  This distinction creates a substantially higher threshold for obtaining relief than *de novo* review.  AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be "given the benefit of the doubt.

*Renico v. Lett*, 559 U.S. 766, 773 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's

answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached") (internal quotation marks and citations omitted); *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting the Supreme Court "has held on numerous occasions that it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (internal quotation marks and citations omitted); *Phillips v. Bradshaw*, 607 F. 3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F. 3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F. 3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F. 3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*, 433 F. 3d 483, 489 (6th Cir. 2006); *Rockwell v. Yukins*, 341 F. 3d 507, 512 (6th Cir. 2003)(en banc).

## III.

### A.

Petitioner first argues that his due process rights were violated when the prosecutor introduced evidence of Petitioner's prior acts of domestic violence against his former wife and two ex-girlfriends solely to establish Petitioner's propensity to commit the charged offenses, in violation of M.R.E. 404(b).  Petitioner further alleges that this evidence was unduly prejudicial and hence should not have been admitted under Mich. Comp. Laws §768.27b.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.*  Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *See Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000).

- 5 -

Petitioner's claim that the state court violated M.R.E. 404(b) or any other provision of state law by admitting evidence of his prior domestic violence is non-cognizable on habeas review. *See Bey v. Bagley,* 500 F 3d 514, 519 (6th Cir. 2007); *Estelle,* 502 U.S. at 72 (Supreme Court's habeas powers did not permit Court to reverse state court conviction based on their belief that the state trial judge erred in ruling that prior injury evidence was admissible as bad acts evidence under California law); *Dowling v. U.S.*, 493 U.S. 342, 352-53 (1990)(admission at defendant's bank robbery trial of "similar acts" evidence that he had subsequently been involved in a house burglary for which he had been acquitted did not violate due process). The admission of this "prior bad acts" or "other acts" evidence against Petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court precedent holding that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *See Bugh v. Mitchell,* 329 F. 3d 496, 512 (6th Cir. 2003). Given the lack of Supreme Court authority on the issue of whether a state court violates a habeas petitioner's due process rights by the admission of evidence to establish Petitioner's propensity to commit criminal acts, the Michigan Court of Appeals' rejection of Petitioner's claim was not an unreasonable application of clearly established federal law. *See Carey v. Musladin,* 549 U.S. 70, 77 ( 2006).

Petitioner's related claim that he was denied a fair trial by the admission of irrelevant and highly prejudicial evidence cannot form the basis for habeas relief because it also involves a state law evidentiary issue. *See Hall v. Vasbinder*, 551 F. Supp. 2d 652, 676 (E.D. Mich. 2008); *rev'd on other grds* 563 F.3d 222 (6th Cir. 2009); *See also Oliphant v. Koehler*, 451 F. Supp. 1305, 1308 (W.D. Mich. 1978). Therefore, Petitioner is not entitled to relief on his first claim.

**B.**

Petitioner next contends that his Sixth Amendment right to counsel was violated when the trial judge refused his request to appoint substitute counsel. This claim is also without merit.

During the fourteen months between the arraignment and the trial date, the trial judge appointed Petitioner four different trial attorneys: David Prine, Mark Scharrer, Steven Dodge, and Heather Nalley. (See Livingston County Docket Sheet, at 1-4).  Prine and other attorneys from his firm were dismissed at Petitioner's request because he accused them of deficient and unethical representation. (Tr. 6/25/10, pp. 7-9; Tr. 9/16/10, pp. 4-5).  Scharrer and Dodge were appointed and both were subsequently discharged due to conflicts of interest. (See Livingston County Docket Sheet, at 4; Tr. 5/13/11, pp. 4-5).  Heather Nalley was appointed in October 2010.  Nalley requested an adjournment in order to review the large amount of materials involved in this case. (Tr. 10/15/10, pp. 3-4).

After Nalley was appointed as substitute counsel, Petitioner filed no fewer than six separate motions for her to be removed from the case.  Petitioner's reasons included an imagined conflict of interest over a horseshoe league, Nalley's failure to effectively communicate with Petitioner, and Nalley's failure to file motions Petitioner asked her to file. (Tr. 1/20/11, pp. 3-5; Tr. 2/17/11, pp. 3-5; Tr. 4/7/11, pp. 4-6; Tr. 5/13/11, pp. 3-5, 11; Tr. 6/2/11, pp. 3-5; Tr. 8/26/11, pp. 5-7).  Because the trial judge found that Nalley was "vigorously" and "zealous[ly]" representing Petitioner in an "exceptional" manner, the court denied nearly all of these requests. (Tr. 1/20/11, p. 6; Tr. 2/17/11, pp. 5, 7; Tr. 4/7/11, p. 7; Tr. 5/13/11, pp. 14-15; Tr. 8/26/11, pp. 11-12).

During the course of Ms. Nalley's representation, Petitioner made several requests to represent himself.  The judge warned Petitioner each time of the dangers of self-representation before permitting Petitioner to represent himself. (Tr. 5/13/11, p. 12; Tr. 6/2/11, pp. 5-12; Tr.

- 7 -

6/3/11, pp. 4-5, 11-12, 16; Tr. 8/26/11, pp. 16-21, 22, 29; Tr. 9/23/11, p. 3).   Once Petitioner

realized that his library access was restrained and he did not have the ability to do online legal

research, the trial court reappointed Nalley as defense counsel. (Tr. 6/16/11, pp. 3-7).   Petitioner

requested for Nalley to be removed yet again.   The trial judge did so briefly, but then reappointed

her two days before trial at Petitioner's request. (Tr. 8/26/11, pp. 5-7, 16-22; Tr. 10/12/11, pp.  3-

5).

> The Michigan Court of Appeals rejected Petitioner's claim:
>
> At defendant's request, the trial court appointed four different attorneys to assist defendant with his defense, and defendant settled on the last of the attorneys, Heather Nalley, for a time, but then repeatedly asked that she be replaced with new counsel. Finally, the trial court granted defendant's request to represent himself, with Nalley serving as standby counsel, and this arrangement held for several months.  However, within a few weeks of trial, defendant again requested appointed counsel, stating that he would accept anyone but Nalley.  The trial court denied the request, advising defendant that if he desired representation, Nalley would remain his court appointed attorney.
> …
>
> In this case, defendant requested a waiver of counsel on the grounds that Nalley did not spend adequate time preparing his defense, failed to file motions he requested, failed to retrieve evidence he suggested, and released documents to an expert witness without authorization.  The trial court properly found that none of these issues constituted proper cause for substitution of counsel.  The choice of theories to pursue, and the preparation of an expert witness, are matters of professional judgment and trial strategy rightfully entrusted to the attorney. Further, defendant's general complaints about Nalley's dedication or case preparation do not warrant good cause for substitution of counsel.  Moreover, Nalley was defendant's fourth attorney.  Granting defendant yet another substitution of counsel would have unreasonably disrupted the judicial process.
>
> *Jones,* 2013 WL 5630075, * 3 (internal citations omitted).

The Sixth Amendment right to the assistance of counsel does not guarantee a criminal

defendant that he or she will be represented by a particular attorney. *Serra v. Michigan

Department of Corrections*, 4 F. 3d 1348, 1351 (6th Cir. 1993)(citing *Caplin & Drysdale v.

United States,* 491 U.S. 617, 624 (1989)).   A criminal defendant who has the desire and the

financial means to retain his own counsel "should be afforded a fair opportunity to secure counsel of his own choice." *Id.* (quoting *Powell v. Alabama*, 287 U.S. 45, 53 (1932)).  Indeed, "[t]he Sixth Amendment guarantees the defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." *U.S. v. Gonzalez-Lopez,* 548 U.S. 140, 144 (2006)(quoting *Caplin & Drysdale,* 491 U.S. at 624-25).

However, while a criminal defendant who can afford his or her own attorney has a right to a chosen attorney, that right is a qualified right. *Serra,* 4 F. 3d at 1348 (citing to *Wheat v. United States,* 486 U.S. 153, 159 (1988)).  Stated differently, the right to counsel of one's own choice is not absolute. *See Wilson v. Mintzes,* 761 F. 2d 275, 280 (6th Cir. 1985).  "Although a criminal defendant is entitled to a reasonable opportunity to obtain counsel of his choice, the exercise of this right must be balanced against the court's authority to control its docket." *Lockett v. Arn,* 740 F. 2d 407, 413 (6th Cir. 1984); *See also Gonzalez-Lopez,* 548 U.S. at 151-52) ("Nothing we have said today casts any doubt or places any qualification upon our previous holdings that limit the right to counsel of choice and recognize the authority of trial courts to establish criteria for admitting lawyers to argue before them...We have recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar.") (internal citations omitted).  Finally, the right to counsel of choice may not be used to unreasonably delay a trial. *See Linton v. Perini,* 656 F.2d 207, 209 (6th Cir. 1981).

In reviewing a motion for substitution of counsel, a reviewing court should consider "the timeliness of the motion; the adequacy of the [trial] court's inquiry into the defendant's complaint; and the asserted cause for that complaint, including the extent of the conflict or

- 9 -

breakdown in communication between lawyer and client (and the client's own responsibility, if any, for that conflict)." *Martel v. Clair*, 132 S. Ct. 1276, 1287 (2012). "Because a trial court's decision on substitution is so fact-specific, it deserves deference; a reviewing court may overturn it only for an abuse of discretion." *Id.*

Petitioner argues that he was entitled to substitute counsel because Ms. Nalley did not spend enough time preparing his defense, failed to file motions he requested, failed to retrieve evidence that Petitioner wanted, and released documents to the defense expert without Petitioner's authorization.

Petitioner is not entitled to relief for several reasons. First, Petitioner failed to establish good cause for substitution of counsel because he failed to show that the conflict between himself and his attorney was so great that it resulted in a total lack of communication, preventing an adequate defense. *See United States v. Jennings*, 83 F. 3d 145, 149 (6th Cir. 1996). Petitioner was not entitled to substitute counsel because his complaints against counsel involved differences of opinion regarding trial strategy rather than any irreconcilable conflict or total lack of communication. *See e.g. Adams v. Smith*, 280 F. Supp. 2d 704, 720 (E.D. Mich. 2003). The record in this case does not demonstrate that the disagreements between Petitioner and his attorney rose to the level of a conflict sufficient to justify the substitution of counsel. *See United States v. Sullivan*, 431 F.3d 976, 981 (6th Cir. 2005).

Second, the trial judge sufficiently inquired into Petitioner's allegations of ineffectiveness against counsel at the hearings on Petitioner's various motions. In light of the fact that there were "multiple lengthy discussions" with Petitioner and his defense counsel about their alleged conflicts, the trial judge did not abuse his discretion in denying Petitioner's motion to appoint him a fifth attorney. *See U.S. v. Vasquez*, 560 F.3d 461, 467 (6th Cir. 2009).

Finally, Petitioner is unable to show that he was prejudiced by the failure of the trial court to appoint substitute counsel, in light of the fact that he received effective assistance of counsel at trial. *Vasquez,* 560 F.3d at 468. "The strained relationship" between Petitioner and his attorney was not a "complete breakdown in communication" that prevented Petitioner from receiving an adequate defense. *Id.*

The Michigan Court of Appeals' conclusion that the trial judge's denial of Petitioner's motion to substitute counsel did not violate his Sixth Amendment rights was not an unreasonable application of federal law. For this reason, Petitioner is not entitled to federal habeas relief. *See Henness v. Bagley*, 644 F.3d 308, 322 (6th Cir. 2011).

## C.

Petitioner next contends that the trial judge erred in failing to suppress a statement that he made to the police, because Petitioner was interrogated after he invoked his right to remain silent. As a related claim, Petitioner contends that the trial judge erred in permitting Petitioner to represent himself at the suppression hearing, without first obtaining a valid waiver of the right to counsel.

The Michigan Court of Appeals rejected Petitioner's suppression claim:

At the hearing regarding defendant's motion to suppress, officer Gary Mitts testified that he and another officer were sent to the Wexford County Jail to pick defendant up and transport him to the Livingston County Jail. The officers took defendant into custody and began the transport at about 5:30 p.m. Mitts testified that as soon as defendant was placed in the back of the patrol car he was read his *Miranda* warnings. Defendant stated that he knew his *Miranda* rights, and when asked specifically what the rights entailed he stated that "it means I can keep my mouth shut if I want to." The officers made no attempt to interrogate defendant during the transport from Wexford County to Livingston County; however, after about 45 minutes defendant began asking the officers questions. After defendant started initiating conversation, Mitts testified that he informed defendant that if defendant wanted to talk he would read defendant his *Miranda* rights again and then they would both ask questions. Defendant then stated "I'm not sayin'

nothing."   No further attempts to question defendant or obtain a waiver of his rights were made by the transport officers.

Detective David Fogo also testified at the suppression hearing.  He testified that he interviewed defendant at the Livingston County Jail sometime "before lunch" the day after defendant was taken into custody and transported from Wexford County.  Fogo testified that the interview lasted about 30 to 40 minutes, and that defendant appeared calm, seemed to understand everything that was going on, and seemed eager to talk to him.  Fogo testified that at the beginning of the interview he asked defendant whether defendant "recalled Officer Mitts advising him of his *Miranda* rights the day before," and defendant stated that he "understood the rights."  Fogo testified that he "clarified" that defendant understood his rights and then specifically asked defendant "if he wanted to talk," and defendant said "yes."

The trial court denied defendant's motion to suppress, concluding that

> from the short amount of video that we watched from May the 4th when he was picked up from the Wexford County Jail, it was clear to mean [sic], and I so find, that Mr. Jones was aware of the rights; he knew what the rights were.  And he exercised the right not to talk to the officer about the incident.  Said he could be silent; he was silent.

>  ...I am going to deny the motion by the Defendant.  I do find that Mr. Jones had a knowing of [sic] the—his rights.  That he was in a condition or a state of mind at—that they were voluntarily done.  I don't find his elaborate discussion during the half hour video that we watched of the May 5th interview showed anything but a person that responded clearly, coherently, understandingly, intelligently, to the questions ... that were asked.

On appeal, defendant argues that the trial court erred by denying his motion to suppress the statements he made during the interview with Detective Fogo.  Specifically, defendant argues that he invoked his right to remain silent during transport, and that Detective Fogo failed to scrupulously honor his invocation of his right to remain silent.

At the outset, we question whether defendant ever actually invoked his right to remain silent under the circumstances of this case.  It is clear from the testimony at the hearing that the transport officers did not intend to interrogate or attempt to interrogate defendant.  Nor did the officers specifically ask defendant to waive his *Miranda* rights.  Nevertheless, even assuming defendant properly invoked his rights during transport, we find no *Miranda* violation.  The first attempt to interrogate defendant did not occur until the day after he was transported and first read his *Miranda* rights.  Further, before Detective Fogo conducted the interrogation, he clarified that defendant understood his *Miranda* rights and was

- 12 -

willing to waive them. Defendant acknowledged that he had been read his *Miranda* rights before the interview was conducted, and he further acknowledged that he understood his rights, but wanted to talk to Detective Fogo. While defendant denies Detective Fogo's account of what happened, claiming that he did not agree to speak to the detective and noting that no recording verifies the detective's account, the trial court was free to judge the credibility of the witnesses. Moreover, defendant cites no authority for the proposition that the police are required to create electronic records of such waivers. Thus, we conclude that there was no *Miranda* violation and suppression was properly denied. The police scrupulously honored defendant's *Miranda* rights because defendant clearly understood his rights and agreed to talk to the detective and there was a significant lapse of time between defendant's first invocation of his right to remain silent and the subsequent attempt to obtain a waiver.

*People v. Jones*, 2013 WL 5630075, at *5-6 (internal citations and footnotes omitted).

A prosecutor may not use a defendant's statements that stem from custodial interrogation unless the prosecutor can demonstrate the use of procedural safeguards effective to secure a defendant's privilege against self-incrimination. *Miranda v. Arizona,* 384 U.S. 436, 444 (1966). Unless other means are devised to inform a suspect of his right to silence and a "continuous opportunity to exercise it," the following warnings must be given to a suspect:

> 1. the person must be warned that he has a right to remain silent;
> 2. that any statement he does make may be used against him;
> 3. and that he has a right to the presence of an attorney, either appointed or retained.

*Miranda,* 384 U.S. at 444. The Supreme Court in *Miranda* further explained:

> "Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked."

*Miranda*, 384 U.S., at 473-474.

The admissibility of statements obtained after a criminal suspect has invoked his right to remain silent depends on whether the police "scrupulously honored" the suspect's invocation of his "right to cut off questioning." *Michigan v. Mosley*, 423 U.S. 96, 104 (1975).  Where the police "scrupulously honor" such an invocation, there is no *per se* prohibition against resuming questioning after the invocation of the right to silence, and a suspect may be approached again later to seek a waiver. *See id.* at 104–05.

The Michigan Court of Appeals reasonably rejected Petitioner's claim.  When Petitioner first spoke with the officers who transported him to the Livingston County Jail, the police honored his request to cut off questioning and did not continue to interrogate him.  Detective Fogo did not speak with Petitioner until the next day, at which time he asked Petitioner if he remembered the *Miranda* warnings which had been given to him by the officers the day before.  Petitioner confirmed that he did.  Petitioner then indicated that he was willing to speak with Detective Fogo.  The Michigan Court of Appeals' conclusion that Petitioner's statement was admissible was reasonable because: (1) the police advised Petitioner of his *Miranda* rights when he was transported back from Wexford County to the Livingston County Jail, (2) the police immediately ceased speaking with Petitioner when he invoked his right to remain silent, (3) Detective Fogo only resumed questioning after a significant period of time, and (4) the detective reminded Petitioner of his *Miranda* rights at this second interview. *See Davie v. Mitchell*, 547 F.3d 297, 310 (6th Cir. 2008).

Even assuming that Petitioner's statement was taken in violation of *Miranda*, he still is not entitled to relief because the admission of his statement was harmless error.  In *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), the U.S. Supreme Court held that for purposes of determining whether federal habeas relief must be granted to a state prisoner on the ground of

- 14 -

federal constitutional error, the appropriate harmless error standard to apply is whether the error had a substantial and injurious effect or influence in determining the jury's verdict. The admission of evidence obtained from a suspect in violation of *Miranda* is considered harmful only if it has a substantial and injurious effect in determining the jury's verdict. *See Kyger v. Carlton,* 146 F. 3d 374, 381-82 (6th Cir. 1998). In light of the overwhelming evidence of guilt in this case, the admission of Petitioner's statement to the police did not have a substantial or injurious influence or effect on the jury's verdict. *Id.* Petitioner is not entitled to relief on this portion of his third claim.

Petitioner further contends that the trial judge erred in permitting Petitioner to represent himself at the hearing on his motion to suppress without obtaining a valid waiver of counsel. The Michigan Court of Appeals rejected the claim:

> Defendant alternatively argues that the trial court erred by proceeding with the suppression hearing in reliance on his continued insistence on self-representation. We disagree.
>
> At the beginning of the suppression hearing, the trial court reminded defendant that he was entitled to appointed counsel:
>
> Q. Mr. Jones, you understand you do have the right to an attorney?
>
> A. Yes, sir.
>
> Q. If you can't afford one I would put Ms. Nalley back on the case for you; you understand that?
>
> A. Yes, sir.
>
> Q. And that would be at public expense; you understand that?
>
> A. Yes, sir.
>
> Q. You understand the maximum possible punishment on this case is up to life in prison?
>
> A. Yes, sir.

- 15 -

Q. You understand, and ... I'll express it here again today, in the opinion of the Court you're doing yourself a disservice by representing yourself-not availing yourself of an attorney to assist you. I'm not asking for you to comment on that. You have exercised your constitutional right to represent yourself. I've told you in the past that I respect that. Knowing these things, Mr. Jones, do you wish to continue representing yourself or do you wish to avail yourself of an attorney?

A. Represent myself.

The trial court accepted defendant's waiver of counsel and proceeded with the hearing.

…

In this case, defendant was given several opportunities to proceed with appointed legal representation. Before beginning the suppression hearing, the trial court informed defendant that he had a right to an attorney at public expense, and offered to reappoint attorney Nalley if he wanted counsel, and also reminded defendant that he was vulnerable to life imprisonment. Further, the trial court expressed its opinion that defendant was doing himself a disservice by insisting on self-representation. Nonetheless, when the trial court asked defendant if he wanted to continue in propria persona, defendant responded unequivocally, "yes, sir." The trial court substantially complied with Williams and MCR 6.005(D)(1), and thus properly accepted defendant's waiver of counsel.

Moreover, to the extent that defendant is arguing that the trial court erred by forcing defendant to choose between self-representation and the services of Nalley, we find no error for the same reasons that we concluded that the trial court did not err by refusing to appoint a fifth public defender as defendant's attorney, as discussed *supra*.

*People v. Jones*, 2013 WL 5630075, at * 6-7.

The United States Supreme Court has held that a waiver of the Sixth Amendment right to counsel is valid only when it reflects "an intentional relinquishment or abandonment of a known right or privilege." *Patterson v. Illinois*, 487 U.S. 285, 292 (1988) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). A defendant's waiver of his right to counsel must "be knowing, voluntary, and intelligent." *Iowa v. Tovar*, 541 U.S. 77, 88 (2004). The waiver must be "done with sufficient awareness of the relevant circumstances." *Id*. at 81 (internal quotation marks

- 16 -

omitted).  It is the criminal defendant's burden to prove that he or she "did not competently and intelligently waive" his or her right to the assistance of counsel. *Id*. at 92.

Before a criminal defendant waives his or her right to counsel, he or she "should be made aware of the dangers and disadvantages of self-representation," so that the record establishes that the defendant knows what he or she is doing "and his choice is made with eyes open." *Faretta v. California*, 422 U.S. 806, 835 (1975) (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)).  The Supreme Court, however, has not "prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel." *Tovar*, 541 U.S. at 88. The information that a criminal defendant must have in order to make an intelligent election "will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." *Id*.  The failure of a district court in a federal criminal case to give a particular prophylactic warning and conduct a particular inquiry in determining whether a defendant should be permitted to waive his or her right to counsel does not in and of itself require reversal of a conviction. *See U.S. v. McDowell*, 814 F. 2d 245, 248-49 (6th Cir. 1987).  There is thus no clearly established federal law, as determined by the Supreme Court, requiring any specific colloquy to determine whether a defendant's waiver of counsel was made with "eyes open." *Mack v. Holt*, 62 Fed. Appx. 577, 580 (6th Cir. 2003); *See also Sullivan v. Pitcher*, 82 Fed. Appx. 162, 165 (6th Cir. 2003) (a formal inquiry into a defendant's desire to proceed pro se "is not a sine qua non of constitutional waiver").

In the present case, the judge advised Petitioner that he had a right to court-appointed counsel to assist him at the hearing and was willing to reappoint Ms. Nalley to represent Petitioner.  The judge warned Petitioner that he faced a maximum of life in prison.  The judge

further admonished Petitioner that he was doing a "disservice" to himself by proceeding pro se at the suppression hearing.  At several previous hearings, the judge had also warned Petitioner of the dangers of self-representation.  Under the circumstances, the Michigan Court of Appeals reasonably concluded that Petitioner's waiver of the right to counsel was valid.  Petitioner is not entitled to relief on his third claim.

### D.

In his fourth and fifth claims, Petitioner contends that he was denied the effective assistance of trial counsel during the times in which Ms. Nalley was representing him.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, Petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id*.  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.  The Supreme Court's holding in *Strickland* places the burden on a defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

- 18 -

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable - a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. at 123 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. at 101. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."*Harrington*, 562 U.S. at 101. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

Petitioner first claims that defense counsel was ineffective for eliciting from the victim during cross-examination that Petitioner had forgery and drunk driving convictions. As the Michigan Court of Appeals noted in rejecting Petitioner's claim, defense counsel did not specifically question the victim about these convictions but was merely questioning the victim about Petitioner's history and convictions for "hurting women" when the victim volunteered the information concerning the forgery and drunk driving. *See Jones,* 2013 WL 5630075, at *10. The victim's answer was non-responsive to counsel's question. This Court rejects Petitioner's claim that counsel was ineffective for eliciting this testimony from the victim, because the

victim's remarks about Petitioner's forgery and drunk driving convictions were a non-responsive answer to a legitimate question from defense counsel. *See Hodge v. Haeberlin*, 579 F. 3d 627, 641 (6th Cir. 2009).

In his fifth claim, Petitioner claims that his defense counsel was ineffective for failing to correct the defense expert's mistaken recollection that Petitioner admitted to threatening to blow up the bank where the victim worked.  The Michigan Court of Appeals rejected Petitioner's claim, in part, by ruling that even if counsel was somehow deficient, any such error was harmless because two other witnesses, an acquaintance and a police detective, testified that Petitioner had threatened to blow up the bank. *People v. Jones*, No. 308293, 2013 WL 5630075, at *10.

A reviewing court "need not determine whether counsel's performance was deficient ... [i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ....". *Strickland*, 466 U.S. at 697.  Thus, if an alleged error by counsel was not prejudicial, a federal court need not determine whether counsel's performance was constitutionally deficient. *See McMeans v. Brigano*, 228 F. 3d 674, 686 (6th Cir. 2000) (citing to *Strickland*, 466 U.S. at 697).  In light of the fact that two other witnesses testified that Petitioner threatened to blow up the bank, any possible deficiency by counsel in failing to correct the defense expert's mistaken recollection that Petitioner told him he threatened to blow up the bank did not prejudice Petitioner.

**IV**

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R.App. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When a court rejects a habeas claim on the merits,

the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell,* 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is not warranted in this case. The Court further concludes that Petitioner should not be granted leave to proceed *in forma pauperis* on appeal, as any appeal would be frivolous. *See* Fed.R.App. P. 24(a).

## V

Accordingly, it is **ORDERED** that Jones's petition for habeas corpus (ECF No. 1) is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED.**

It is further **ORDERED** that leave to appeal *in forma pauperis* is **DENIED.**

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: September 14, 2015

- 21 -

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 14, 2015.

s/Michael A. Sian
MICHAEL A. SIAN, Case Manager